Mr. Court, Counsel, my name is Jennifer Freese and I have the pleasure of representing Antonio Outlaw in his criminal appeal before this court. Mr. Outlaw was indicted on three different counts of distribution of a controlled substance as well as count four which was conspiracy to distribute a controlled substance. Mr. Outlaw, prior to trial, pled guilty to counts one and two of the indictment. Counts three and four proceeded to jury trial and Mr. Outlaw was found guilty of count three under an aiding and abetting theory and to count four. We have four different issues to bring up before the court. First of all, whether or not there was sufficient evidence of counts three and four. Whether or not the escape obstruction enhancement under 3C1.1 was proper. Whether or not the leader organizer enhancement under 3B1.1 was proper. And whether or not a variance was appropriate. I understand the heavy burden that Mr. Outlaw carries on our first argument with reference to insufficient evidence. I understand that and I still think that under the case law that it's appropriately preserved by filing a, or excuse me, by making a motion for judgment of acquittal, your honor. Your honor, what I would submit to this court that is concerning and particularly concerning with Mr. Outlaw's case is that he is not alleged to be someone who is dealing mass quantities of heroin to each person. He's somebody who's doing a 0.1 gram here, a 0.1 gram here, maybe a 0.5 gram here. And what the evidence shows with the mass amount of heroin users that testified before the court. And what the concrete evidence that this court had that was presented are different pieces of evidence. We have both counts one and count two, the controlled buys where Mr. Outlaw showed up to conduct the heroin transactions. Further, we have some other controlled buys that were presented to the court, were presented to the jury of a September of 2014 controlled buy that was through Mr. Mack. Mr. Mack was called and Mr. Mack talked to the user, Mr. Morrison. And Mr. Mack actually delivered the heroin that was at issue. Further, later on that year in December, Mr. Montgomery was called. He was the one on the phone and he was the one that delivered. I would submit to the court that when you look at the sufficiency of the evidence, what we have and what we know that is true are these controlled buys. Why isn't the testimony that Montgomery testified, he drove him to a drug deal. Why isn't that sufficient to support the verdict? The issue, your honor, is that Montgomery was the person on the phone. Montgomery was the person that Mr. Morrison said that he talked to. And Montgomery was the person that was in the vehicle. The evidence, your honor, is- It's a conspiracy charge. What's that? It's a conspiracy charge. I understand that. I understand that. He certainly participated in that sale. I respectfully disagree. In this case, we have Montgomery who is arranging the sale. And my client being merely present in the vehicle when the sale itself happens, does not implicate him in the conspiracy. And further, we have Mr. Montgomery, known as Black. He's not a mere presence, he's the driver. I understand he's the driver. I gather Montgomery said a knowing driver. Montgomery, your honor, testified that he did not associate with Mr. Outlaw. Mr. Montgomery testified- What does associate mean? That he wasn't part of this organization with my client. Montgomery testified at trial, he was the government's own witness, that he acted alone, that he did his own drug dealing, and that it was him by himself. Same with Mr. Mack. He didn't act alone that day. Being an associate with my client, or being around my client, or which I don't think was disputed at trial, is different than being involved in a conspiracy. To prove the involvement in a conspiracy, there has to be a knowing and intentional agreement. And here, the evidence by the government is lacking. I'd also submit to the court that, again, when you look at the things that we know, we know about these controlled buys, we know about the controlled buys, we know about that they happened, and that the drugs that were dealt, that my client is not disputing that he was a heroin seller, that he sold heroin. He pled guilty to counts one and two before trial. The issue is whether or not he's the man behind the mirror, whether or not he's the Wizard of Oz, that is behind this large sale conspiracy. And I would submit to the court that that evidence is lacking. I turn next to the count two, or excuse me, the second argument, which is the escape obstruction enhancement. And here we have what is alleged to have been some sort of a jailbreak plot. And the evidence that the government submitted at sentencing for this particular enhancement was largely through Paris Lawrence, who was a jail snitch, that the first thing that he said was that he was looking to help himself. Well, the government's brief says he was also a fellow gangster with Mr. Alwo. Correct. Well, that's not just a jail snitch. He was somebody who, when he first approached- Before they were in jail, he was a fellow gangster. Right. I haven't read the testimony, but that's what- And I don't disagree with that, Your Honor. But how that goes to the next step, you can say that my client was a bad guy. I mean, I don't necessarily disagree with, you know, I'm not going to fight with you on that, but- We have to look at Lawrence's testimony in the context of the physical evidence, like the destroyed or damaged cell window and so forth. And I don't deny to the court that there was an alleged attempt to jail- The fact they didn't pull it off doesn't mean the enhancement was erroneous. You're exactly right. It has to be an escape or an attempt to escape. And the evidence here clearly shows that Mr. Valencia, he is on the phone talking about different equipment. The transcripts show that Mr. Valencia planned to have his associates from California come and try to break him out of the jail. But as far as Mr. Outlaw's involvement in that, I don't think that that is sufficient for the court. I think that the government relies heavily on Mr. Outlaw's passing comment that is, well, if Mr. Valencia is going to break out, then I'm going to break out too. And that comment, standing alone, there's plenty of things that you can say. This was talked about at the previous argument, but whether or not you intend to attempt to carry through that argument, or you intend to carry through with that statement is a different thing. And we're not, I understand this isn't an escape, but- But the finding, contrary to your position, has to be clear error. Correct. Yes. And when the court- There's an awful lot of circumstantial evidence that seems to me makes it very hard for us to find clear error. There's an awful lot of circumstantial evidence that would make it difficult to find that Mr. Valencia wasn't involved in this. I mean, he's on the phone, he's- But as far as Mr. Outlaw- It's not true that the damaged jail window was Outlaw's window. Correct. And there was a lot of back and forth about whether Valencia was trying to get the jail cell moved in with Outlaw, so they could go out the same window. But the evidence- Yeah, we're interested. The evidence though is that there's two levels to this jail. There's the upstairs that Mr. Valencia was in, and there's the downstairs. And the evidence is that there's kind of a congregating area that is above, and the inmates would go back to their cells to use the bathroom and such. So the issue that Mr. Valencia asked that he be moved is really moot, because they're congregating all in the same area anyway. And I'd also submit to the court that the court relies very heavily on what Mr. Valencia said. And this isn't Mr. Valencia's case. You know, it's not Mr. Valencia that is alleged to have done this. It's Mr. Outlaw, that clearly nobody escaped, but whether or not he actually attempted to escape. Not whether or not he said, well, you know what, I'm going to do this too, or whatever. It's whether or not there was an attempt, and whether or not Mr. Outlaw was involved in this escape plot that did not actually happen. Thank you, Your Honor. I'll reserve my remaining time if there's no further questions. Very good. Mr. Chatham? Please, the court. Counsel. I will touch on, to start, the sufficiency of the evidence trial. This was a case where there was an abundance of evidence. I believe it was 27 non-law enforcement witnesses testified. The vast majority, I believe 24 or 25 of those were the defendant's customers. They testified, and I'm going to use generalities because there were so many, and not refer to specific testimony. The brief points out the particular testimony for each individual where they testified to the identity of the defendant. And the identity of the other individuals in the conspiracy. But the overall scheme was that the defendant was known as Mike. The group was known as either Mike or We The Best. These witnesses testified that the defendant sent runners to meet with them after they would either talk on the phone with him or with one of the underlings, as it were. Several witnesses identified the defendant as the leader of this particular group. I would disagree with counsel when she said that we had to prove, I believe Mrs. Freese intimated that we had to prove that the defendant was the Wizard of Oz. We didn't have to prove that he was the Wizard of Oz, only a munchkin, someone who was involved in the general scheme. But that said, he wasn't. So he didn't get to the leadership issue? Only for purposes of the sentencing issue. For purposes of trial, he just had to be someone who was involved and a member or participant in the agreement. And the evidence was ample for that. The evidence did in fact show that he was the Wizard of Oz, though. But I just wanted to clarify that obviously we don't have to prove particular leadership status in an 846 case. With respect to that, it was really witness after witness. The conspiracy was called We The Best, it wasn't called I The Best. There's ample evidence here that the defendant agreed with others to distribute this heroin over the course of time. With respect to the aiding and abetting count, this was a controlled buy. There were three individuals in the car. Two of them testified at trial, Mr. Morrison and Mr. Montgomery. Both of them testified that the defendant was the one who drove the vehicle. Surveillance officers saw the defendant get out of that vehicle after he left the scene back at the apartment. This was the same vehicle that had been involved in other control buys from this particular conspiracy where the defendant hadn't necessarily been present. There was more than enough evidence for the jury to find that the defendant knew in advance of the nature and character of the events that were about to take place and that he acted to further those. And so, additionally, it was charged as both a distribution and an aiding and abetting. Mr. Morrison actually testified that some of the 15 baggies that he received came from the defendant. That there was sort of a, one Mr. Montgomery threw in some and Mr. Outlaw threw in some of the others. So the jury didn't find the distribution beyond a reasonable doubt, but they found the aiding and abetting. And the testimony would certainly support a finding that the defendant knew the character of the transaction that was about to occur. If the jury could find that the defendant, in fact, provided some of the drugs. So there's sufficient evidence on both of the counts of conviction at trial. With respect to the sentencing issues, one thing that was not mentioned before, that this is actually a harmless error case. The district court, at the end of the sentencing hearing, mentioned after making the guideline findings that even if the court was wrong in finding the leader organizer or the obstruction of justice enhancements applied, that it would have applied the exact same sentence. And that's at page 36 of the sentencing transcript. So even if the court somehow got wrong on the actual ins and outs of the obstruction, or that somehow it wasn't actually obstruction under 3C1.1, which obviously we believe it is. It doesn't matter for purposes of this case, because the court would have sentenced the defendant to the same sentence at the end of the day. With respect to, particularly on the obstruction of justice issue, the court was entitled to rely on Mr. Lawrence's testimony, and did in fact rely on that testimony. There was some hearsay, but as Your Honor noted, there was a lot of circumstantial evidence that the defendant was a participant in this plot. Not just a mere passive, someone that this was happening nearby, the defendant was present. The testimony by Mr. Lawrence was that the defendant was present while he was discussing with Mr. Valencia. While Mr. Lawrence was discussing with Mr. Valencia the moving of the cells, having the defendant move to the cell. As Your Honor noted, it was the defendant's cell window that was the one that was damaged. Mr. Valencia wasn't even in there. So there was only two people, the inference is pretty clear. If that's the window that's being damaged, at least one of those people has to know something about it. That inference is certainly supported by the evidence. And here, the testimony was that the defendant was the one who knew that. And that was also supported by the testimony or the evidence that the defendant's girlfriend was putting money on Mr. Valencia's books. Showing that there's an outside connection, machinations that the defendant's making to make this, to get funds to Mr. Valencia. So there's additional evidence there that supports the defendant's role in this jailbreak. Mr. Lawrence did note that he was a prior, a member of the same gang as the defendant. I don't know that the evidence went so far as that they knew each other in the gang when they were out on the street before. But I think they both had the same gang affiliation, which meant that when they got into prison or into jail with one another that they were able to sort of strike up a friendship immediately. They had that thing in common. So it wasn't that they had a long history with one another, but that they had that commonality that aided their initial friendship in jail. But that said, it does go to Mr. Lawrence's credibility that he would be willing to out another member of his own gang. There would certainly be complications of that or potential consequences of that within the gang system for testifying against another member of the same gang, so we believe that's a support of his testimony. Ultimately, we don't know all the details of the plot. It appeared to be a fairly harebrained scheme with the damaging of the window. They weren't able to get very far into it. And what they were planning on doing with whatever small saw that they were going to pass through, how they were going to get out of jail with that, who knows? It doesn't matter. When it comes to this, it's either an attempt, it's either an escape or an attempt to an escape. And at this point, the district court found that there was a clear attempt to escape. The defendant was involved in that attempt and that's sufficient. Unless there are other questions about any of the other issues raised, I would cede the remainder of my time. Thank you. Ms. Freeze or Bo? Thank you, Your Honor. First of all, I would submit with the heroin addict witnesses, with the lay witnesses, it doesn't matter whether or not there were five witnesses or whether or not there were 25 witnesses. The same commonality goes that they have a casual relationship with the truth, where we had felons, we had thieves, we had people that would steal, we had people that had relapsed, we had- So you're just attacking credibility there, are you not? I understand that. The jury rejected that argument, I assume. Yes, and I understand that, but I do submit to the court that when the court looks at the information that the court knows, the controlled buys, that this is a unique case that the court should reverse and remand this case. But I will move on to the obstruction enhancement. One thing that I would submit to the court, first of all, I recognize the harmless error, and that is often an analysis that is put in front of this court. Well, even if I didn't find this enhancement, I would have found this anyway. But I would suggest to the court that when looking at Paris Lawrence, this is not somebody who came willingly, this is not somebody, he was subpoenaed. He did not show up for his first sentencing hearing. He conveniently said that he had overslept, and a material witness warrant was procured where Mr. Lawrence was said, you better be here or else. And in this case, we're not looking at whether or not Mr. Outlaw knew about this, we're not looking at whether or not Mr. Outlaw knew that Mr. Valencia had this plan, it's whether or not he was in on this. And I would also submit one thing that is concerning to me is Mr. Chatham's remarks about putting money on the books. Mr. Valencia was a Spanish-speaking man, all of the phone calls, about I think 99% was, per the record, were in Spanish. The information about money being put on the books, when asked, the witness said, I have no idea, it could have been $10, it could have been $100. So the implication that somehow these two knew each other or that these two associated with each other versus that my client was actively or was involved in this attempt to escape from the jail, I think is a jump. And with no more questions, I would concede the rest of my time and ask that the court reverse and remand this case. Thank you. Thank you, counsel. Case has been well briefed and effectively argued and we'll take it under advisement.